Filed 1/27/23  Licea v. Brown Sugar CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LUIS LICEA, | B310487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV24404) |
| v. | |
| BROWN SUGAR, LLC, | |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Pacific Trial Attorneys, Scott J. Ferrell, David W. Reid, Victoria C. Knowles and Richard H. Hikida for Plaintiff and Appellant.

Barnes & Thornburg, Eric S. Fisher, Seth Alan Gold and Kian J. Hudson for Defendant and Respondent.

_____

Appellant Luis Licea (Licea) appeals from the trial court's April 8, 2021 judgment entered in favor of respondent Brown Sugar, LLC (Brown Sugar), following the court's issuance of a November 25, 2020 order sustaining Brown Sugar's demurrer to the entirety of Licea's first amended complaint (FAC). We conclude that (1) Licea's claims for violation of California's Automatic Renewal Law (ARL), Business and Professions Code section 17600 et seq.,[1] fail because the ARL does not provide a private right of action, and (2) Licea's claim under California's Unfair Competition Law (UCL), section 17200 et seq., fails because the FAC does not allege the causation necessary to establish Licea's standing. We therefore affirm the trial court's April 8, 2021 judgment.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

Brown Sugar "operates an over-the-internet streaming service that provides subscribers access to a large library of films and television shows." Licea "is a blind California consumer," who contends that he "both genuinely wanted to avail himself of [Brown Sugar]'s services and, as a consumer advocate for the blind, also wanted to determine whether [Brown Sugar] would abide by its obligations under California law."

On June 29, 2020, Licea filed a complaint in the superior court against Brown Sugar alleging three causes of action for violation of the ARL. The complaint also asserted a cause of action for violation of the UCL, premised on the alleged ARL violations. Licea alleges that, in 2020, "he accepted a 'free' trial subscription of an online movie/film/TV show streaming service

[1] All unspecified statutory references are to the Business and Professions Code in effect on January 1, 2020.

2

and related product from Brown Sugar." He contends that Brown Sugar's free trial offer violated the ARL by, inter alia, failing to include the automatic renewal and free trial offer terms in a "clear and conspicuous" manner, charging his debit card without first obtaining his "affirmative consent" to the automatic renewal offer terms, and failing to provide an acknowledgment that includes the automatic renewal offer terms and cancellation policy. (Boldface omitted.)

As relevant to this appeal, Licea alleged that he "has standing to pursue th[e UCL] claim because he suffered injury in fact and has lost money or property as a result of [Brown Sugar]'s actions as set forth herein. [Licea] accepted [Brown Sugar]'s free trial offer but was later charged monies in violation of the law, thus causing an actual injury to [Licea]." Licea alleged further, in the portion of the complaint concerning the alleged ARL violations, that he "would like to use [Brown Sugar]'s services again in the future and will likely do so, but would like to ensure that [Brown Sugar] offers such services fairly and in compliance with its obligations under California law."

On July 31, 2020, Brown Sugar removed the action to federal district court[2] and then, on August 14, 2020, filed a motion to dismiss the complaint. Brown Sugar argued, inter alia, that Licea lacked standing to pursue his UCL claim because (1) he admitted in his complaint that, once Brown Sugar makes the required ARL disclosures, he likely will use Brown Sugar's services in the future, and (2) this admission demonstrates that Brown Sugar's alleged failure to make the required ARL

_____

[2] *Licea v. Brown Sugar LLC* (C.D.Cal. Oct. 5, 2020, No. 2:20-CV-06916).

3

disclosures did not cause any injury to Licea. Rather than oppose the motion to dismiss, Licea filed an amended complaint in the district court action on August 26, 2020. The amended complaint revised the ARL causes of action and added more specificity concerning how Brown Sugar allegedly violated the ARL; however, notwithstanding Brown Sugar's arguments challenging Licea's standing to pursue his UCL claim, the amended complaint repeated nearly verbatim the allegations from the original complaint that Licea "would like to use [Brown Sugar]'s services again in the future after [Brown Sugar] complies with California law, and will likely do so in light of the quality of the content of [Brown Sugar]'s product or service, but would like to ensure that [Brown Sugar] offers such services fairly and in compliance with its obligations under California law." Brown Sugar therefore filed a motion to dismiss the amended complaint on September 8, 2020, again arguing, inter alia, that these allegations constituted an admission that Brown Sugar's alleged failure to provide the required ARL disclosures did not cause any injury to Licea, and that Licea thus lacked standing to pursue a claim under the UCL.

On October 5, 2020, without ruling on the pending motion to dismiss, the district court remanded the case to the superior court for lack of subject matter jurisdiction. That same day, Licea filed a first amended complaint in the superior court action—the operative complaint for purposes of this appeal.[3]

---

[3] Because Licea filed an amended complaint in the district court action, Brown Sugar contends that the FAC should be captioned "second amended complaint," and that Licea improperly filed the amended pleading without leave of court. For simplicity, however, we refer to Licea's amended complaint filed in the superior court as the "FAC."

4

Like the original and amended complaints, the FAC asserts three causes of action under the ARL against Brown Sugar: (1) "failure to present automatic renewal offer terms or continuous service offer terms clearly and conspicuously and in visual proximity to the request for the consent to the offer," in violation of section 17602, subdivision (a)(1); (2) "failure to obtain consumer's affirmative consent before subscription charges are imposed," in violation of sections 17602, subdivision (a)(2) and 17603; and (3) "failure to provide acknowledgment with automatic renewal offer terms and cancellation policy," in violation of section 17602, subdivisions (a)(3) and (b). (Boldface and capitalization omitted.) In addition, the FAC alleges a fourth cause of action against Brown Sugar for violation of the UCL, premised on a subset of the alleged ARL violations.

The FAC repeats the allegations in the first two complaints that (1) "[Licea] would like to use [Brown Sugar]'s services again in the future after [Brown Sugar] complies with California law, and will likely do so in light of the quality of the content of [Brown Sugar]'s product or service, but would like to ensure that [Brown Sugar] offers such services fairly and in compliance with its obligations under California law," and (2) "[Licea] accepted [Brown Sugar]'s free trial offer, but was later charged monies in violation of the law, thus causing an actual, economic injury to [Licea]." The FAC, however, includes the following new allegation: "[Licea] would not have consented to the free trial offer if [Brown Sugar] had made the appropriate disclosures required by the ARL."

On October 20, 2020, Brown Sugar filed a demurrer to the entirety of Licea's FAC, along with a supporting request for judicial notice. Brown Sugar argued that Licea's ARL claims should be dismissed because (1) the ARL does not provide a

private right of action, and (2) alternatively, Brown Sugar is exempt from the ARL, pursuant to section 17605, subdivision (b). With respect to the UCL cause of action, Brown Sugar argued that Licea failed to state a claim because (1) the UCL claim "is based entirely upon the ARL claim, and the ARL claim fails," and (2) Licea "fails to allege an injury in fact and therefore lacks standing." In support of the latter argument, Brown Sugar filed a motion to strike the new allegation in the FAC that " '[Licea] would not have consented to the free trial offer if [Brown Sugar] had made the appropriate disclosures required by the ARL.' " Brown Sugar argued that this allegation directly contradicts Licea's allegations that he "would like to use [Brown Sugar]'s services again in the future after [Brown Sugar] complies with California law, and will likely do so in light of the quality of the content of [Brown Sugar]'s product or service."

Licea filed an opposition to the demurrer on November 12, 2020, and in support of his opposition, requested that the court take judicial notice of certain legislative history relating to Senate Bill No. 340, the bill that became the ARL. Licea also opposed Brown Sugar's motion to strike. He argued, inter alia, that the new allegation in the FAC was not inconsistent with his earlier allegations: "There is nothing contradictory about [the earlier allegations] . . . . [¶] . . . Fairly read, [they are] intended to mean that although [Licea] is interested in using [Brown Sugar]'s services again in the future, such usage is contingent upon [Brown Sugar]'s compliance with the ARL. In other words, if [Brown Sugar] fails to comply with the ARL, then [Licea] shall definitely not use [Brown Sugar]'s services again in the future." (Boldface and italics omitted.)

At the November 25, 2020 hearing on Brown Sugar's demurrer and motion to strike, the trial court granted the

parties' requests for judicial notice. The court then sustained the demurrer with leave to amend. The court also granted the motion to strike, "[d]ue to the demurrer to each cause of action in the FAC being sustained." Licea represented at the November 25, 2020 hearing that he would not be filing an amended complaint, and on April 8, 2021, the court dismissed the action and entered judgment in favor of Brown Sugar.

On January 22, 2021, Licea filed a notice of appeal from the court's November 25, 2020 minute order sustaining Brown Sugar's demurrer and motion to strike. Although the November 25 order is nonappealable, Licea subsequently provided us with a copy of the April 8, 2021 final judgment. We exercise our discretion to construe Licea's notice of appeal as taken from that appealable judgment. (See, e.g., *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 666, fn. 2 ["[w]e liberally construe [the] notice of appeal from the order sustaining the demurrer, a nonappealable order, to be from the subsequent judgment of dismissal"].)

## DISCUSSION

### A.     *Standard of Review*

We review a trial court's decision sustaining a demurrer de novo. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.) We assume the truth of the factual allegations in the operative complaint and, based on those allegations, determine whether a valid cause of action is stated under any legal theory. (See *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1087−1091.)

7

## B.   *Overview of ARL*

"California's automatic renewal law"—codified in sections 17600 through 17606—"was enacted 'to end the practice of ongoing charging of consumer credit or debit cards . . . without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service.' " (*Mayron v. Google LLC* (2020) 54 Cal.App.5th 566, 570 (*Mayron*), review den. Dec. 9, 2020, S265116, citing § 17600.)  "The law requires a consumer's affirmative consent to any subscription agreement automatically renewed for a new term when the initial term ends.  [Citation.] It further requires 'clear and conspicuous' disclosure of the offer terms, and an 'easy-to-use mechanism for cancellation.' " (*Mayron, supra,* at p. 570, quoting § 17602, subds. (a) & (b).) In addition, the ARL provides that "[i]n any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in [s]ection 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer."  (§ 17603.)

## C.   *The ARL Does Not Afford a Private Right of Action*

The trial court sustained Brown Sugar's demurrer to the ARL claims because it concluded that the statute does not confer a private right of action.  We agree.

A private right of action does not exist under a California statute unless the state Legislature has manifested its intent to create one. (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596 (*Lu*).)  "Such legislative intent, if any, is revealed through the language of the statute and its legislative

8

history.  [Citation.]  [¶]  A statute may contain ' "clear, understandable, unmistakable terms," ' which strongly and directly indicate that the Legislature intended to create a private cause of action.  [Citation.]  For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation.  [Citations.]  Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action.  [Citations.]  If, however, a statute does not contain such obvious language, resort to its legislative history is next in order."  (*Id.* at pp. 596–597, fn. omitted.)

We therefore first consider whether the ARL contains " ' "clear, understandable, unmistakable" ' " language that "strongly . . . indicate[s]" a legislative intent to provide a private right of action.  (*Lu, supra,* 50 Cal.4th at p. 597.)  Section 17600 of the ARL, titled "legislative intent," is silent on the issue, stating only:  "It is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  (§ 17600.)  Section 17604 of the ARL, titled "violation; civil remedies," similarly is devoid of any express reference to a private right of action.  It provides, in relevant part, "[n]otwithstanding [s]ection 17534, a violation of this article shall not be a crime.  However, all available civil remedies that apply to a violation of this article may be employed."  (§ 17604, subd. (a).)  We agree with the Sixth District's conclusion in *Mayron* that, although section 17604, subdivision (a)'s reference to "all available civil remedies" might mean "that a private party can sue for any remedies available under the civil law" (*Mayron, supra,* 54 Cal.App.5th at p. 571), the language also

9

can support the opposite inference—namely, "an intent not to create a new cause of action[,] but to require enforcement through existing means (such as through [section] 17200 et seq., which allow individuals harmed by unlawful business practices to seek restitution and injunctive relief)." (*Mayron*, *supra*, 54 Cal.App.5th at p. 572.) We thus conclude that the ARL does not contain "clear, understandable, unmistakable" language suggesting that the Legislature intended the ARL to confer a private right of action. (*Lu*, *supra*, 50 Cal.4th at p. 598.)

Having so concluded, we next consider whether legislative history reveals an intent that the ARL afford a private right of action. (*Lu*, *supra*, 50 Cal.4th at p. 597.) Here again, we find *Mayron*'s analysis persuasive: "The legislative history of the automatic renewal law contains no clear statement about an individual's right to sue under the statute. There is no mention of a private right [of] action at all. . . . [To the contrary, in the April 14, 2009 Senate Judiciary Committee bill analysis for Senate Bill No. 340,] [u]nder a heading that reads, '[r]emedies available under the bill'—where one would expect reference to a private right of action if one were contemplated—[the analysis] instead notes violations can be enforced through section 17200 [the UCL], which allows a private party to 'bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party.' [Citation.] The legislative history's reference to enforcement by way of a different statute is a strong indication that no independent private right of action was intended by the new law." (*Mayron*, *supra*, 54 Cal.App.5th at pp. 573–574.)

Thus, like the *Mayron* court, we "see[ ] no clear indication of intent to create a private right of action in either the statutory text or its legislative history," and we therefore "conclude there is

no such right under the [ARL]." (*Mayron*, *supra*, 54 Cal.App.5th at p. 573.)

Licea's arguments in opposition do not convince us otherwise. First, Licea contends that section 17603's "unconditional gift" provision demonstrates that "the Legislature intended to create a private right of action by enacting the ARL." We agree with the conclusion in *Mayron*, however, that section 17603 "provides only a passive right to retain any products received from a violator, rather than a right to pursue a refund of fees a claimant could show had been paid." (*Mayron*, *supra*, 54 Cal.App.5th at p. 572.) Licea insists that *Mayron*'s analysis is flawed because it "offers no explanation [of] how 'the goods, wares, merchandise, or products' received by a California consumer can constitute an 'unconditional gift' . . . if [a] merchant is permitted to retain the harmed consumers' money." But it does not follow from the absence of a private right of action under the ARL that a merchant who violates the statute will be permitted to retain consumers' payments. Consumers' funds can be recouped in an action brought by the Attorney General or brought by the aggrieved consumers themselves via a claim under another statute, such as the UCL, provided the consumers meet the requisite standing requirements (discussed, *post*).

We thus find unpersuasive Licea's argument that " 'reason, practicality, and common sense' " dictate that we interpret section 17603 as evidencing the Legislature's intent to create a private right of action under the ARL. And we therefore necessarily reject Licea's related arguments that we should disregard *Mayron* and other decisions[4] holding that

---

[4] These decisions include *Johnson v. Pluralsight, LLC* (9th Cir. 2018) 728 Fed.Appx. 674 (*Johnson*) and *Roz v. Nestle Waters*

11

the ARL confers no private right of action because (1) they do not interpret section 17603's "unconditional gift" provision as supporting the existence of such a right, and (2) they focus their analysis on legislative history predating the addition of the "unconditional gift" provision to Senate Bill No. 340 on June 10, 2009.

Moreover, Licea's latter argument fails for the additional reason that even the legislative history post-dating the June 10, 2009 addition of the "unconditional gift" provision to Senate Bill No. 340 does not suggest any legislative intent to create a private right of action under the ARL. We find persuasive the summary and analysis of this legislative history set forth in *Lopez v. Stages of Beauty, LLC* (S.D.Cal. 2018) 307 F.Supp.3d 1058 (*Lopez*)—a case in which plaintiff's counsel advanced the same arguments it makes here. After quoting the language from the April 14, 2009 Senate Judiciary Committee bill analysis indicating that the ARL can be enforced through the UCL (discussed in *Mayron*, *ante*), the *Lopez* court explained: "Plaintiff asserts that this quotation cannot be used to interpret the California Legislature's intent because it 'was issued prior to the key amendment (including for the first time an "unconditional gift" provision) to [Senate Bill No.] 340.' . . . However, the [June 24, 2009] Assembly Committee on Judiciary bill analysis . . . recognizes that the ARL would include a provision deeming goods, wares, merchandise, or products sent to a consumer under a continuous service or automatic renewal in violation of the ARL as an unconditional gift. . . . The analysis also provides that 'all civil remedies that apply to a violation may be employed,' and lists 'existing law,'

_____

*North America, Inc.* (C.D.Cal. Jan. 11, 2017, No. 2:16-CV-00418-SVW-JEM) [2017 WL 132853].

including the following . . . Business [and] Professions Code sections: [section] 17200 et seq. (the UCL), [section] 17500, [section] 17534, [section] 17536, [section] 17204, [section] 17203, and [section] 17206. [Citation.] Thus, the committees' bill analyses specifically contemplate that consumers who suffer[ ] an injury by violations of the ARL can seek relief under other statutory provisions, including the UCL." (*Lopez, supra*, 307 F.Supp.3d at p. 1068.) We find unconvincing Licea's assertion that the bill analyses' "reference[ ] to 'existing law' . . . was merely explaining how and why [Senate Bill No.] 340 would change existing law" (capitalization omitted), and we therefore agree with the *Lopez* court, that along with the text of the ARL itself, "[t]hese analyses . . . 'strongly support[ ] a Legislative intent to pursue causes of action for violations of [the ARL] under existing laws.' [Citation.]" (*Lopez, supra*, at p. 1068.)[5]

Second, Licea urges that a private right of action exists under the ARL pursuant to sections 17535 and 17604, subdivision (a). Section 17535 provides, in relevant part: "Any person, corporation, firm, partnership, joint stock company, or

_____

[5] Also unavailing is Licea's contention that, by considering the June 24, 2009 Assembly Committee on Judiciary bill analysis, the district court in *Lopez* necessarily "abandoned any reliance upon the [April 14, 2009] Senate Judiciary Committee's bill analysis." Licea urges that this "aspect of *Lopez* is highly significant because such document was expressly cited and relied upon as the sole relevant legislative history" in other federal decisions finding no private right of action under the ARL. (Boldface and capitalization omitted.) As the portion of the *Lopez* decision quoted above makes clear, however, the *Lopez* court relied on both the April 14 and the June 24, 2009 analyses in reaching its conclusion that the ARL confers no private right of action.

13

any other association or organization which violates . . . this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.  [¶]  Actions for injunction under this section may be prosecuted by the Attorney General . . . or by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter."  (§ 17535.) Licea argues that because "[section] 17535 provides relief against any person or entity which violations 'this chapter,' " and "the California Legislature intentionally placed the ARL within the same chapter as [section] 17535," "the ARL . . . [therefore] provides consumers with remedies of injunctive relief and restitution via [section] 17535."  Licea's argument with respect to section 17604, subdivision (a) is similar.  As noted, *ante*, that section provides:  "Notwithstanding [s]ection 17534, [which establishes criminal liability for certain violations,] a violation of this article shall not be a crime.  However, all available civil remedies that apply to a violation of this article may be employed."  (§ 17604, subd. (a).)  Licea urges that "[t]he reference to 'this article' is a reference to Article 9, which only contains the ARL statutes.  In other words, the California Legislature carefully exempted any criminal liability for ARL violations via [section] 17604[, subdivision] (a), but allowed all other provisions including civil remedies (including the remedies in [section] 17535) for violations of the ARL to apply."

Like the district court in *Lopez*, however, we conclude that Licea " 'misse[s] a crucial distinction between the existence

of a private right to enforce [the ARL] (such as under the UCL [False Advertising Law (FAL)], and/or [section] 17535), and the existence of an independent cause of action under [the ARL] itself.' [Citation.] Section 17535 'explicitly authorizes a private right of action by "any person" for violations of [chapter 1 of . . . Business and Professions Code, which includes the ARL].' [Citation.] However, by stating actions '*under this section* may be prosecuted by . . . any person who has suffered injury in fact,' the California Legislature clarified its intent 'that such a cause of action be pursued under [section] 17535 itself' and not the ARL. [Citations.]" (*Lopez, supra*, 307 F.Supp.3d at p. 1067.) And as discussed, *ante*, section 17604, subdivision (a)'s reference to " 'all available civil remedies' " is consistent with a legislative intent "to require enforcement through existing means," such as the UCL. (*Mayron, supra*, 54 Cal.App.5th at p. 572.)

Third, Licea argues that the ARL confers a private right of action because the statute's legislative history "indicates that the UCL and FAL were perceived to be inadequate" for protecting consumers and because the ARL is a "remedial statute" that must be "broadly construed" to effectuate its purpose. (Boldface and capitalization omitted.) But Licea fails to explain why the enforcement gap the Legislature intended the ARL to address cannot be closed through an action brought by the Attorney General or via private suits brought under other statutes, such as the UCL, that make ARL violations independently actionable. (See *Mayron, supra*, 54 Cal.App.5th at p. 574 ["[p]laintiff urges that outcome [i.e., finding no private right of action] is contrary to the remedial purpose of the statute and will undermine its consumer protection function. But the automatic renewal law can be enforced with an action brought by the Attorney General. A private individual can also pursue

15

enforcement through an unfair competition lawsuit, if economic loss resulted from the violation"].)

Fourth, and finally, Licea contends that "multiple federal courts" have recognized a private right of action under the ARL, pointing to the decisions in *Kissel v. Code 42 Software, Inc.* (C.D.Cal. Apr. 14, 2016, No. SACV 15-1936-JLS (KESx)) [2016 WL 7647691 at pp. *6–*7], *In re Trilegiant Corp., Inc.* (D.Conn. 2014) 11 F.Supp.3d 82, 126, *Noll v. eBay, Inc.* (N.D.Cal. May 30, 2013, No. 5:11-CV-04585-EJD) [2013 WL 2384250 at p. *6], and *Noll v. eBay, Inc.* (N.D.Cal. 2015) 309 F.R.D. 593, 600. We note, as an initial matter, that we are not bound by any of these decisions. Moreover, we find persuasive *Lopez*'s analysis distinguishing the cases: "[T]he [c]ourt disagrees with each of these cases. For example, *Kissel* failed to distinguish between the existence of a private right to enforce the ARL through existing law, like the UCL, and the existence of an independent cause of action under the ARL itself. [Citation.] Additionally, *In re Trilegiant Corp.* considered whether the provisions of the ARL could be enforced by out-of-state consumers against California businesses and did not directly analyze whether the ARL creates a private right of action. [Citation.] Similarly, the *Noll* cases also found that the ARL limited recovery to California consumers without directly analyzing whether the ARL creates a private right of action for California consumers." (*Lopez, supra*, 307 F.Supp.3d at p. 1068, fn. 2.)[6]

---

[6] In light of our conclusion that *Kissel*'s reasoning is flawed, we reject Licea's argument that *Mayron* is "unpersuasive" because it fails to address *Kissel*.

Accordingly, we conclude that the ARL does not confer a private right of action, and Licea's claims under the ARL therefore fail.[7]

### D. *The UCL Claim Does Not Adequately Allege Causation*

The UCL " ' "borrows" violations from other laws by making them independently actionable as unfair competitive practices.' " (*Mayron, supra*, 54 Cal.App.5th at p. 574, quoting *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) "The unfair competition statutes come with an express standing requirement, however. An action can be brought only 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.' [Citation.] It is not enough that a plaintiff lost money; to have standing, there must be a causal link between the unlawful practice and the loss." (*Ibid.*, quoting § 17204).

Here, Licea alleges that Brown Sugar did not provide certain disclosures required under the ARL. But "[t]o establish standing, [Licea] would also need to allege that he ordered [Brown Sugar's services] but would not have done so had the disclosures been provided." (See *Mayron, supra*, 54 Cal.App.5th at pp. 574−575.) Instead, in each of his complaints, including the operative FAC, Licea alleges precisely the opposite—namely, that

_____

[7] Our conclusion renders unnecessary consideration of Brown Sugar's argument that section 17603 "does not apply to intangible services" such as those it offers. We also need not address Brown Sugar's contention that it is exempt from the ARL because it and its parent company are regulated by the Federal Communications Commission, or Licea's related contention that the trial court erred in taking judicial notice of certain materials Brown Sugar cites in support of its exemption argument.

he "would like to use [Brown Sugar]'s services again in the future after [Brown Sugar] complies with California law [i.e., makes the requisite disclosures under the ARL], and will likely do so in light of the quality of the content of [Brown Sugar]'s product or service." As Brown Sugar persuasively argues, these allegations suggest that Licea "would have purchased and maintained [Brown Sugar's services] even if [Brown Sugar] had complied with the [ARL]" (see *Mayron, supra*, 54 Cal.App.5th at pp. 574–575)—a concession by Licea that the alleged absence of required ARL disclosures did not cause any injury. This admission is fatal to Licea's standing to pursue a UCL claim, and distinguishes the facts here from the cases on which Licea relies. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 317 (*Kwikset*) ["plaintiffs who can truthfully allege they were deceived . . . into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' . . . and have standing to sue" under the UCL]; *Johnson, supra*, 728 Fed.Appx. at p. 677 [containing no indication that plaintiff admitted he would have purchased a subscription from defendant had defendant complied with the ARL]; *Davidson v. Kimberly-Clark Corp.* (9th Cir. 2018) 889 F.3d 956, 966 [involving alleged violation of FAL and containing no indication that plaintiff admitted she would have purchased the product irrespective of the allegedly false advertising].)

Moreover, Licea cannot rely on his new allegation in the FAC—added only after Brown Sugar challenged his standing under the UCL— that he "would not have consented to the free trial offer if [Brown Sugar] had made the appropriate disclosures required by the ARL" because it contradicts his earlier allegations conceding that he likely would have purchased Brown Sugar's services even had Brown Sugar made the required

18

ARL disclosures. (See *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044 ["[W]hen a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier. [Citations.] Absent an explanation for the inconsistency, a court will read the original defect into the amended complaint, rendering it vulnerable to demurrer again."].)[8] Finally, Licea's argument that he need not allege actual reliance is a red herring. Brown Sugar does not contend that Licea failed to allege actual reliance, but that he failed to allege any form of causation whatsoever. Licea agrees that he must allege facts demonstrating causation to establish standing under the UCL but, as set forth, *ante*, he has failed to do so.

Accordingly, because we conclude that the ARL confers no private right of action and Licea failed adequately to allege a violation of the UCL, the trial court correctly sustained Brown Sugar's demurrer to the FAC. We therefore affirm the trial court's judgment in favor of Brown Sugar.

---

[8] Because we disregard this new allegation for purposes of our analysis, we need not address Licea's contention that the trial court erred by striking the allegation from the FAC on another ground, or Brown Sugar's related contention that Licea waived his right to challenge the court's ruling on the motion to strike.

**DISPOSITION**

We affirm the trial court's April 8, 2021 judgment. Respondent Brown Sugar, LLC is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.